**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| ALFONSO POLLARD, | ) | |
| PLAINTIFF, | ) | |
| VS. | ) | CV00-H-1647-S |
| RYDER/ATE, INC., | ) | |
| DEFENDANT. | ) | |

01 JUL 10 PH 2: 32

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

JUL 1 0 2001

## MEMORANDUM OF DECISION

The Court has before it the April 30, 2001 motion of defendant Ryder/ATE, Inc. for summary judgment.  Pursuant to the Court's May 2, 2001 order, the motion was deemed submitted, without oral argument, on May 29, 2001.

### I. Procedural History

Plaintiff commenced this action on June 14, 2000 by filing a complaint in this court alleging liability on the part of his former employer, Ryder/ATE, Inc. ("Ryder"), for allegedly terminating plaintiff because of his race.[1]  (See Compl. ¶ 27.) In his complaint, plaintiff contended that defendant's alleged conduct constituted a violation of Title VII, 42 U.S.C. ¶¶ 2000e,

---

[1] Plaintiff also originally alleged liability on the part of a number of other defendants who were dismissed with prejudice pursuant to this court's October 4, 2000 order.

*35*

et. seq.[2]   (See Compl. ¶ 1.)  On July 5, 2000, plaintiff filed his first amended complaint and on July 19, 2000 plaintiff filed his second amended complaint . (See First Am. Compl.; Second Am. Compl.)  Defendant filed an answer to the second amended complaint on September 1, 2000.  (See Def.'s Answer.)  Under the October 11, 2000 order, the deadline for filing dispositive motions was fixed as April 30, 2001.  Defendant's April 30, 2001 motion for summary judgment asserts that no genuine issue of material fact exists and that Ryder/ATE, Inc. is entitled to judgment as a matter of law.  (See Def.'s Mot. Summ. J.)

Pursuant to the court's May 2, 2001 order, defendant was directed to file any additional evidentiary matters by May 8, 2001 and any brief in support of its motion for summary judgment by May 15, 2001. By that same order, plaintiff was directed to file any evidentiary matters and any brief in opposition to the motion by May 22, 2001 and May 29, 2001, respectively.  On April 30, 2001, defendant submitted evidence[3] in support of the motion and filed a supporting memorandum of law.  Plaintiff filed

---

[2] Plaintiff also originally alleged state law claims against the defendant which were dismissed with prejudice pursuant to the court's October 4, 2000 order.

[3] Defendant submitted the March 14, 2001 deposition of Alfonso Pollard with exhibits; the April 27, 2001 declaration of Lynn Rivers with exhibits; and the April 27, 2001 declaration of Kenny Gordon with exhibits.

nothing in opposition to the motion for summary judgment.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary
judgment is proper "if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to judgment
as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322
(1986). The party asking for summary judgment always bears the
initial responsibility of informing the court of the basis for
its motion and identifying those portions of the pleadings or
filings which it believes demonstrate the absence of a genuine
issue of material fact. See id. at 323. Once the moving party
has met his burden, Rule 56(e) requires the nonmoving party to go
beyond the pleadings and by his own affidavits, or by the
depositions, answers to interrogatories, and admissions on file,
designate specific facts showing that there is a genuine issue
for trial. See id. at 324.

The substantive law will identify which facts are material
and which are irrelevant. See Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 248 (1986). All reasonable doubts about the facts
and all justifiable inferences are resolved in favor of the non-
movant. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115

3

(11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  See id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  See Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at

4

trial.  Once the moving party satisfies its burden using this
method, the non-moving party must respond with positive evidence
sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not
bear the burden of proof at trial can satisfy its initial burden
on summary judgment is to <u>affirmatively</u> show the absence of
evidence in the record to support a judgment for the non-moving
party on the issue in question.  This method requires more than a
simple statement that the non-moving party cannot meet its burden
at trial but does not require evidence negating the non-movant's
claim; it simply requires that the movant point out to the
district court that there is an absence of evidence to support
the non-moving party's case.  <u>See</u> <u>Fitzpatrick</u>, 2 F.3d at 1115-16.
If the movant meets its initial burden by using this second
method, the non-moving party may either point out to the court
record evidence, overlooked or ignored by the movant, sufficient
to withstand a directed verdict, or the non-moving party may come
forward with additional evidence sufficient to withstand a
directed verdict motion at trial based on the alleged evidentiary
deficiency.  However, when responding, the non-movant can no
longer rest on mere allegations, but must set forth evidence of
specific facts.  <u>See</u> <u>Lewis v. Casey</u>, 518 U.S. 343, 358 (1996)
(citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561

(1992)).

### III. Relevant Undisputed Facts[4]

Plaintiff is African-American.  He began working for defendant Ryder in January of 1997 as a Dispatcher/Road Supervisor stationed at the Birmingham-Jefferson County Transit Authority.[5]  (<u>See</u> Dep. of Alfonso Pollard 42-43; Gordon Decl. ¶ 4.)  Plaintiff was responsible for supervising bus schedules and operators in connection with the Birmingham-Jefferson County transit system.  (<u>See</u> Dep. of Alfonso Pollard at 44.) Plaintiff's direct supervisor was Raymond Taylor. (<u>See</u> Gordon Decl. ¶ 4.)

At all relevant times, Kenny Gordon (African-American) was the General Manager of the Birmingham-Jefferson County Transit Authority and had overall supervisory responsibility for plaintiff. (<u>See</u> Gordon Decl. ¶ 1.)  Defendant Ryder has a policy prohibiting harassment in the workplace which states that defendant has "zero tolerance" for harassment or discrimination and will take immediate corrective action, including termination,

---

[4] If facts are in dispute, they are stated in the manner most favorable to the plaintiff.  <u>See</u> <u>Fitzpatrick</u>, 2 F.3d at 1115.

[5] Defendant Ryder operates and manages the Birmingham-Jefferson County transit system as a contractor for the Birmingham-Jefferson County Transit Authority.  (<u>See</u> Rivers Decl. ¶ 3.)

to address any inappropriate behavior.  (See Rivers Decl. ¶ 5.)
Plaintiff was aware that harassment was not tolerated in the
workplace and had learned of defendant's policy against
harassment during training.  (See Dep. of Alfonso Pollard 64-65;
219.)

In July of 1999, Pamelia Smoot, a driver and employee of
defendant, reported to Gordon that plaintiff was engaging in
inappropriate sexual conduct toward her.[6]  (See Gordon Decl. ¶¶
3-4; Rivers Decl. ¶ 6.)  Gordon began an investigation of those
charges pursuant to company policy. (See Gordon Decl. ¶3.)
During the investigation, Gordon met with and/or collected
written statements from Smoot, plaintiff, Taylor, Arlington
Chandler (a supervisor), James Oden (a supervisor), and three
other employees to gather information about the charges.  (See
Gordon Decl. ¶3; Ex. A to Gordon Decl.)   Gordon turned the
investigation over to Anna Crouse (white) several days later.
(See Rivers Decl. ¶ 7.)  During August and September 1999, Anna
Crouse and Lynn Rivers[7] conducted interviews with and/or

_____

[6] Smoot alleged that Pollard engaged in the following
behavior:  (1) touching her crotch and claiming it was an
accident; (2) touching her buttocks with a radio; (3) touching
her breast with an ink pen; and (4) making several inappropriate
and sexually suggestive comments to her.  (See Gordon Decl. ¶ 3.)

[7] Lynn Rivers became Deputy General Manager of the
Birmingham-Jefferson County Transit Authority on August 4, 1999.
(See Rivers Decl. ¶1.)

collected written statements from nineteen employees in
connection with Smoot's harassment charges. (See Rivers Decl. ¶
7; Ex. B to Rivers Decl.)  The investigation revealed two
individuals besides Smoot who reported that they had witnessed
inappropriate sexual behavior by Pollard toward Smoot.[8] (See
Rivers Decl. ¶ 9.)

Plaintiff alleges that Crouse acted with racial animus
toward him based in part on the manner in which Crouse conducted
her investigation.  (See Dep. of Alfonso Pollard 93, 95-96, 109.)
Plaintiff alleges that Crouse asked questions that were
irrelevant to the investigation, such as the nature of
plaintiff's relationship with his supervisor, and Crouse "appears
to me [plaintiff] to be a racist person." (See Dep. of Alfonso
Pollard 95-96, 108.)  Plaintiff stated that a co-worker informed
him that Crouse had handled investigations of white employees
charged with sexual harassment who were not terminated.  (See id.
at 97.)  Plaintiff does not know any specifics about the alleged
white employees charged with sexual harassment and cannot state

_____

[8] One employee stated that he witnessed the incident in
which plaintiff touched Smoot's buttocks with a radio and later
observed plaintiff engaging in inappropriate behavior with a work
release prisoner stationed at the terminal; another employee
stated that he heard plaintiff making inappropriate comments
about Smoot's body parts; other employees reported that plaintiff
and Smoot engaged in inappropriate behavior together.  (See
Rivers Decl. ¶ 9; Ex. B, C to Rivers Decl.)

the nature of the harassment allegations against them.  (See id. at 100, 121-122.)  Plaintiff was told by the co-worker that the two men were stationed in Miami, Florida and Cobb County, Georgia, (see id. at 102), but he represented to the EEOC in his Charge of Discrimination that he has "no direct knowledge of these white males, their alleged offense or if the allegations made against them were substantiated," (see Ex. 4 to Dep. of Alfonso Pollard).

During the course of the investigation, Gordon decided it was appropriate to suspend plaintiff without pay pending the outcome of the investigation.  (See Gordon Decl. ¶ 6; Ex. B to Gordon Decl.) After the investigation was completed, Ryder terminated plaintiff's employment effective September 28, 1999. (See Dep. of Alfonso Pollard 43.)  Gordon stated that he, as General Manager, made the decision to terminate plaintiff and Gordon and Rivers met with plaintiff to inform him of his termination.  (See Gordon Decl. ¶ 7.)  Gordon stated that he terminated plaintiff based on the evidence gathered in the investigation corroborating Smoot's complaint and Gordon's supervisory belief that plaintiff's conduct could not be tolerated.  (See Gordon Decl. ¶ 7.)

On February 24, 2000, plaintiff timely filed a Charge of Discrimination with the EEOC and on March 5, 2000, the EEOC

issued a dismissal and notice of right to sue.  (<u>See</u> Dep. of Alfonso Pollard 170, 182; Exs. 4, 5 to Dep. of Alfonso Pollard.)

## IV. Applicable Substantive Law and Analysis

As noted earlier, plaintiff's complaint alleges that defendant is liable under Title VII for allegedly terminating plaintiff because of his race.  (<u>See</u> Compl. ¶ 27.)  Generally, defendant's motion for summary judgment asserts that plaintiff's complaint is due to be dismissed because no genuine issue of material fact exists and defendant is entitled to judgment as a matter of law.  (<u>See</u> Def.'s Mot. Summ. J.)  Specifically, defendant articulates a number of reasons why summary judgment should be granted:  (1) Plaintiff cannot establish a prima facie case of race discrimination because he cannot demonstrate that defendant treated similarly situated employees outside his classification more favorably than himself; (2) Plaintiff cannot demonstrate that defendant's articulated reasons are a pretext for discrimination; and (3) Plaintiff's claim is barred by the doctrine of judicial estoppel.  (<u>See</u> Def.'s Mem. Summ. J. 10-22.) The Court is aware that the summary judgment rule applies in job discrimination cases just as in other cases.  <u>See</u> <u>Chapman v. AI Transport</u>, 229 F.3d 1012, 1025 (11th Cir. 2000) (en banc) (rejecting an earlier, contrary general rule and emphasizing that no thumb is to be placed on either side of the scale).

The analysis of the plaintiff's claim will be determined not only by the nature of the allegations but also by the quality of the evidence offered in support of those claim.  See Standard, 161 F.3d at 1330 (noting that "[t]he analytical framework and burden of production var[y] depending on the method of proof chosen").  In general, a plaintiff may attempt to establish a claim of illegal employment discrimination through the use of direct evidence, circumstantial (indirect) evidence, or statistics.  See id.; see also Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999) (recognizing the availability of either direct or circumstantial evidence).  A plaintiff's ability to proceed through the use of circumstantial evidence of discrimination is necessarily important because direct proof of discrimination is uncommon.  See Combs v. Plantation Patterns, 106 F.3d 1519, 1537 (11th Cir. 1997); Grigsby v. Reynolds Metals Co., 821 F.2d 590, 595 (11th Cir. 1987).  Direct evidence is "[s]uch evidence [which], if believed, proves the existence of a fact in issue without inference or presumption." Burns v. Gadsden State Community College, 908 F.2d 1512 (11th Cir. 1990). Cf. Wright v. Southland Corp., 187 F.3d 1287, 1293-94 (11th Cir. 1999) (per Tjoflat, J.) (defining direct evidence as "evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and

11

a protected personal characteristic" and finding the outcomes reflected in prior case law consistent with that definition); see also Bass v. Board of County Commissioners, Orange County, Florida, 242 F.3d 996, 1010 (11th Cir. 2001) (discussing meaning of "direct evidence" in the context of a Title VII race discrimination claim; "direct evidence" refers to a type of evidence which, if true, would require no inferential leap in order for a court to find discrimination."). However, direct evidence does not include "stray remarks in the workplace" or "statements by nondecisionmakers" or "statements by decisionmakers unrelated to the decisional process itself." Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (O'Connor, J., concurring) (1989);  see also EEOC v. Alton Packaging Corp., 901 F.2d 920, 924 (11th Cir. 1990) (quoting Price Waterhouse).

Here, plaintiff has presented only circumstantial evidence of racial discrimination. "In evaluating [discrimination] claims supported by circumstantial evidence, [the courts of this circuit] use the now-familiar framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)." Combs, 106 F.3d at 1527. Under the McDonnell Douglas and Burdine framework, the plaintiff

12

first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally.  <u>See</u> <u>id.</u> at 1527-28.  The methods of presenting a prima facie case, as well as the exact elements of the case, are not fixed; rather they are flexible and depend to a large degree upon the facts of the particular situation.  <u>See</u>, <u>e.g.</u>, <u>Nix v. WLCY Radio/Rahall Communications</u>, 738 F.2d 1181, 1185 (11th Cir. 1984); <u>Lincoln v. Board of Regents of Univ. Sys.</u>, 697 F.2d 928, 937 (11th Cir. 1983).  In general, a plaintiff establishes a prima facie case of disparate treatment employment discrimination by showing that he or she was a qualified member of a protected class and was subjected to an adverse employment action but that otherwise similarly situated employees outside the plaintiff's class were treated dissimilarly.[9]  <u>See</u> <u>McDonnell Douglas</u>, 411 U.S. at 802 (hiring); <u>Holifield v. Reno</u>, 115 F.3d 1555, 1562 (11th Cir. 1997) (discipline); <u>see also</u> <u>Nix</u>, 738 F.2d at 1185 (discipline); <u>Pittman v. Hattiesburg Mun. Separate Sch. Dist.</u>, 644 F.2d 1071, 1074 (5th Cir. 1981) (wages).

Once the plaintiff has shown a prima facie case and,

---

[9] <u>See also</u> <u>McDonnell Douglas</u>, 411 U.S. at 802 n.13 ("The facts necessary will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not applicable in every respect in different factual situations.").

thereby, has raised the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.[10]  See Combs, 106 F.3d at 1528.  The employer "need not persuade the court that it was actually motivated by the proffered reasons." Burdine, 450 U.S. at 254-55; see Chapman, 229 F.3d at 1024.  If the employer satisfies that burden by articulating one or more such reasons, then the presumption of discrimination falls and the burden of production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination.[11]  Where the defendant articulates multiple, reasonable, legitimate and nondiscriminatory reasons, plaintiff must rebut each of defendant's proffered reasons.  See Chapman, 229 F.3d at 1024-25. Although the prima facie case is irrelevant once the employer has offered a legitimate reason for its actions, the evidence of pretext may include the same evidence offered to establish the prima facie case.  See Combs, 106 F.3d

---

[10] See Chapman, 229 F.3d at 1032 (A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which the employer based its subjective opinion.).

[11] If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.  Simply quarreling with that reason is not sufficient.  Chapman, 229 F.3d at 1030.

at 1528.

Despite this shifting of the burden of production between the plaintiff and the defendant under the McDonnell Douglas and Burdine framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at. 253.  Given that the ultimate burden of persuasion always lies with the employee, a plaintiff may prevail on an employment discrimination claim and may also defeat a summary judgement either by proving that intentional discrimination did indeed motivate the defendant or by producing sufficient evidence to allow a rational trier of fact to disbelieve the employer's proffered legitimate reasons, thus permitting but not compelling the trier of fact to make a finding of illegal discrimination. See Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2108-09 (2000) (pointing out that the production of the necessary sufficient evidence by plaintiff will not always prevent the employer from prevailing on a Rule 50 motion and suggesting that the strength of plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other properly considered evidence that supports the employer's case are among other factors to take into account in evaluating a

15

Rule 50 motion);[12] <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502

(1993); <u>Abel v. Dubberly</u>, 210 F.3d 1334, 1339 (11th Cir. 2000);

<u>Alexander v. Fulton County</u>, 207 F.3d 1303, 1336 (11th Cir. 2000);

<u>Combs</u>, 106 F.3d at 1529-38 (interpreting <u>Hicks</u> and the post-<u>Hicks</u>

case law); <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913,

920-21 (11th Cir. 1993).

Assuming without deciding that plaintiff has established a

prima facie case of termination,[13] and has thereby raised the

---

[12] The court in <u>Chapman</u> modified the statement in <u>Combs</u>
contrary to this holding in <u>Reeves</u> after noting that the standard
for granting summary judgment mirrors the standard for judgment
as a matter of law.  <u>See</u> <u>Chapman</u>, 229 F.3d at 1025, n.11.

[13] This is a big assumption is light of plaintiff's
inability to identify any alleged comparators by name.  <u>See</u>
<u>Holifield v. Reno</u>, 115 F.3d 1555, 1562 (11th Cir. 1997)("If a
plaintiff fails to show the existence of a similarly situated
employee, summary judgment is appropriate where no other evidence
of discrimination is present").  At his deposition, plaintiff
testified that a co-worker told him that, allegedly, Ms. Crouse
conducted an investigation of two white men charged with sexual
harassment and chose not to terminate those men. (<u>See</u> Dep. of
Alfonso Pollard 98-99.) Plaintiff could not identify the men by
name and knew no specifics about their positions, pay, or the
allegations against them. (<u>See</u> <u>id.</u> at 100.)  Plaintiff only had
been told by his co-worker that the men were stationed in Miami,
Florida and Cobb County, Georgia.  (<u>See</u> <u>id.</u> at 102.)
    The court seriously doubts that plaintiff can establish the
existence of similarly situated comparators based on such
generalities.  Even assuming, however, that plaintiff could
establish the existence of similarly situated comparators based
on the above allegations, in this case plaintiff's scant
knowledge of the two alleged comparators is inadmissible under
Federal Rule of Evidence 802 because such knowledge is based
entirely on information told to him by a co-worker, not on the
plaintiff's direct knowledge.

presumption of discrimination, plaintiff's claim nonetheless fails as the defendant has made a very strong showing of articulated legitimate and non-discriminatory reasons for its employment decisions at issue, which reasons the plaintiff has failed to rebut.  See Combs, 106 F.3d at 1527-29 (explaining that once an employment discrimination plaintiff establishes a prima facie case, the burden of production then shifts to the defendant to articulate legitimate, non-discriminatory reasons for its action, following which the burden of production then shifts back to the plaintiff to offer evidence tending to show that the defendant's proffered reasons are really pretext for illegal discrimination); Chapman, 229 F.3d at 1024-25 (same as above).

Defendant has satisfied its burden by articulating the following legitimate, nondiscriminatory reason for terminating plaintiff:  defendant's belief "that plaintiff had engaged in inappropriate conduct towards a female employee whom he directly supervised, which could constitute sexual harassment in violation of Ryder's company policies." (See Def.'s Mem. Summ. J. 13-14; Gordon Decl. ¶ 7.)  Defendant states that Pamelia Smoot, an employee of defendant, made allegations of sexual harassment against plaintiff and Ryder conducted an investigation into those allegations.  (See Gordon Decl. ¶¶ 3-4; Rivers Decl. ¶ 6.) Defendant stated that during the investigation, members of

17

management met with and/or collected written statements from
Smoot, plaintiff, and at least nineteen employees in connection
with the charges. (See Gordon Decl. ¶3; Ex. A to Gordon Decl;
Rivers Decl. ¶ 7; Ex. B to Rivers Decl.)  The investigation
revealed two individuals besides Smoot who reported that they had
witnessed inappropriate sexual behavior by Pollard toward Smoot.
(See Rivers Decl. ¶ 9.)  Defendant stated that based upon the
results of that investigation, defendant terminated plaintiff's
employment.  (See Gordon Decl. ¶ 7.)   These are reasons that
might motivate a reasonable employer.  See Combs, 106 F.3d at
1543.

     While defendant's belief that plaintiff's behavior could
constitute sexual harassment in violation of defendant's policies
is arguably subjective, a subjective opinion is nonetheless
legally sufficient if the defendant articulates a clear factual
basis for that opinion.  See Chapman, 229 F.3d at 1032.   The
Eleventh Circuit has clearly stated that "[f]ederal courts 'do
not sit as a super-personnel department that reexamines an
entity's business decisions. No matter how medieval a firm's
practices, no matter how high-handed its decisional process, no
matter how mistaken the firm's managers, the [court] does not
interfere. Rather our inquiry is limited to whether the employer
gave an honest explanation of its behavior.'"  See id. at 1030

18

(quoting <u>Elrod v. Sears, Roebuck & Co.</u>, 939 F.2d 1466, 1470 (11th Cir.1991) (citations omitted)); see also <u>Nix v. WLCY Radio/Rahall Communications</u>, 738 F.2d 1181, 1187 (11th Cir.1984) (An "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."); <u>Abel v. Dubberly</u>, 210 F.3d 1334, 1339 n. 5 (11th Cir.2000). In this case, defendant provided a legitimate reason for plaintiff's termination based upon facts obtained through an extensive investigation into the allegations of sexual harassment against plaintiff.

As rebuttal evidence,[14] plaintiff offers only his opinion that Ms. Crouse was a racist and inadmissible hearsay from a co-worker that Ms. Crouse allegedly investigated two white employees on charges of sexual harassment that did not result in termination.  (See Dep. of Alfonso Pollard 93-95; 97-102.) Plaintiff alleges that Ms. Crouse handled the investigation in a manner that led him to believe race motivated the termination decision because Ms. Crouse asked questions about plaintiff's relationship with his supervisor which plaintiff did not believe

---

[14] As noted earlier, plaintiff did not submit evidence or a brief in opposition to defendant's motion for summary judgment. With respect to evidence of pretext, however, the court has given plaintiff every benefit of the doubt by extracting possible "rebuttal evidence" from statements made by plaintiff during his deposition.

to be relevant to her investigation.  (See id. at 94-95.)
Plaintiff has offered no evidence, other than opinion and
conjecture, to suggest that defendant's decision to terminate
plaintiff was based on anything other than a legitimate concern
about the sexual harassment charges against plaintiff.[15]  In a
case such as this, "[w]here the defendant's justification
evidence completely overwhelms any inference to be drawn from the
evidence submitted by the plaintiff, the district court may
properly acknowledge that fact and award summary judgment to the
employer."  Grigsby v. Reynolds Metals Co., 821 F.2d 590, 597
(11th Cir. 1987).

Certainly the paucity of evidence from plaintiff of pretext
does not satisfy the requirement of Combs and Chapman which
require a production of evidence to create a factual or
credibility issue as to the articulated reason for the employment
decision given by a defendant.  Chapman, 229 F.3d at 1024-25;
Combs, 106 F.3d at 1529.  Although plaintiff quarrels with
defendant's reasoning for the termination, plaintiff has offered
insufficient evidence to show that defendant's decision to

---

[15] In fact, although plaintiff alleges that Crouse acted
with racial animus, the evidence suggests that Gordon alone,
without the aid of Crouse, made the decision to terminate
plaintiff. (See Gordon Decl. ¶ 7.)  Plaintiff has not presented
any evidence to suggest that Gordon made the decision to
terminate plaintiff based on race.

terminate plaintiff was in fact <u>motivated by</u> a prohibited factor. See <u>Lee v. GTE Fla., Inc.</u>, 226 F.3d 1249, 1253 (11th Cir. 2000). Because plaintiff has failed to rebut defendant's articulated, legitimate and nondiscriminatory reason, plaintiff's Title VII claim is due to be dismissed.[16]

In summary, the Court finds that plaintiff has failed to establish his claim of Title VII discrimination.  Because no material issues of fact remain and because defendant Ryder/ATE, Inc. is entitled to judgment as a matter of law, summary judgment is appropriate.  A separate order will be entered.

DONE this _10th_ day of _July_ , 2001.

_____

SENIOR UNITED STATES DISTRICT JUDGE

---

[16] This decision eliminates the need to address defendant's third argument concerning judicial estoppel.